**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **SYSLORE OY,**<br><br>    Plaintiff,<br><br>v.<br><br>**IBM CORPORATION,**<br><br>    Defendant. | Civil Action No.:<br><br><br>**TRIAL BY JURY DEMANDED** |

**COMPLAINT FOR INFRINGEMENT OF PATENT**

Now comes Plaintiff, Syslore Oy ("Plaintiff" or "Syslore"), by and through undersigned counsel, and respectfully alleges, states, and prays as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") to prevent and enjoin Defendant IBM Corporation (hereinafter "Defendant"), from infringing and profiting, in an illegal and unauthorized manner, and without authorization and/or consent from Plaintiff from U.S. Patent No. 8,458,143 ("the '143 Patent" or the "Patent-in-Suit"), which is attached hereto as Exhibit A and incorporated herein by reference, and pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

**THE PARTIES**

2. Plaintiff is a Finnish company with its principal place of business at Porkkalankatu 7 B 3, FI-00180 Helsinki, Finland.

3. Upon information and belief, Defendant is a corporation organized under the laws of Delaware, having a principal place of business at 1 New Orchard Road, Armonk, New York 10504. Upon information and belief, Defendant may be served with process c/o Global Corporate Services, Inc., 704 North King Street – Suite 500, Wilmington, Delaware 19899.

4. Upon information and belief, Defendant physically resides in this judicial District via its offices at 1111 Superior Ave., Cleveland, Ohio.

## JURISDICTION AND VENUE

5. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1 *et seq*.

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1338(a).

7. This Court has personal jurisdiction over Defendant by virtue of its systematic and continuous contacts with this jurisdiction and its residence in this District, as well as because of the injury to Plaintiff, and the cause of action Plaintiff has risen in this District, as alleged herein.

8. Defendant is subject to this Court's specific and general personal jurisdiction pursuant to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in this forum state and in this judicial District; and (iii) being incorporated in this District.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. §1400(b) because Defendant resides in this District under the Supreme Court's opinion in *TC Heartland v. Kraft Foods Group Brands LLC,* 137 S. Ct. 1514 (2017) through its regular and established place of business in this District.

## FACTUAL ALLEGATIONS

10. On June 4, 2013, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '143 Patent, entitled "METHOD OF AND A SYSTEM FOR ERROR

CORRECTION OS SERVICE REQUESTS IN AN INFORMATION SYSTEM" after a full and fair examination. The '143 Patent is attached hereto as Exhibit A and incorporated herein as if fully rewritten.

11. Plaintiff is presently the owner of the '143 Patent, having received all right, title and interest in and to the '143 Patent from the previous assignee of record. Plaintiff possesses all rights of recovery under the '143 Patent, including the exclusive right to recover for past infringement.

12. To the extent required, Plaintiff has complied with all marking requirements under 35 U.S.C. § 287.

13. As identified in the '143 Patent, prior art systems had technological faults. See Ex. A at Col 1:18-45.

14. More particularly, the '143 Patent identifies that the prior art provided systems that had "a plurality of service sources and a common access point for receiving and routing service requests. The access point comprises the necessary analyzing capabilities in order to determine which service source of the information system is the target of a received service request. This is carried out by comparing predetermined keywords known by the access point with the content of the received service request. In case a known keyword is identified in the service request, the service request is forwarded from the access point to the service source which provides the requested service." Ex. A at Col. 1:18-28.

15. Further, when a service source receives a service request it carries out an analysis in order to identify the requested service. This is usually carried out by analyzing parameters included in the service request. When a known parameter is found in the message, the service associated with this parameter is provided to the source of the service request, which in a mobile

communication system might be the mobile station of a subscriber, for instance. Ex. A at Col.1:29-36.

16. However, this caused specific problems. Namely, a problem with the above-described prior art solution is the lack of user friendliness. In order for a user to obtain a specific service it is necessary for the user to transmit a service request with a predetermined syntax. If the user does not know the correct syntax or if the user for some reason transmits a service request with a typing error, the access point and/or the service source of the information system are not able to identify the service requested by the user. Thus the user will not be provided with the desired service. Ex. A at Col.1:37-48.

17. To address this specific technical problem, the '143 Patent comprises a non-abstract method, system, and device for a solution which improves the user friendliness of an information system. Ex. A at Col. 1:49-51.

18. In further addressing this specific technical problem identified in the Background section, the '143 Patent comprises a non-abstract method, system, and device for implementing error correction in an information system including a plurality of service sources providing respective services; or to provide an error correction solution capable of automatically updating itself as the services offered by an information system are updated. Ex. A at Col.1:52-59.

19. The '143 Patent identified that this features were advantageous to improve user friendliness. Ex. A at Col.1: 65-66. Further, the error correction capabilities make it possible for the information system to correct service requests including errors such that the subscriber having transmitted a service request with an error will receive the desired service anyway. Ex. A at Col.1:66-Col.2:3.

20. The solution of the '143 Patent may also involve a self-learning error correction capability. Ex. A at Col.2:4-5. This is achieved as service requests which have led to a successful identification of the requested service are stored in a memory. Ex. A at Col.2:5-7. This memory will thus include only those service requests whose contents are correct, as they have all previously led to successful identification of the requested service. Ex. A at Col.2:7-10. It is not necessary to make manual changes to the error correction capabilities when for instance new services are added to the information system, because the correct service requests for obtaining these new services will be stored in the memory automatically as soon as a service request aimed to obtain such a new service leads to successful identification of the service. Ex. A at Col.2:10-16. An incorrect service request can thus be corrected by utilizing the content of these stored service requests. Ex. A at Col.2:16-18.

21. One of the inventions claimed in the '143 Patent comprises covers an error correcting device.

22. Particularly, Claim 8 of the '143 Patent states:

> "8. An error correction device, comprising:
> a memory containing only service requests whose contents are correct, wherein,
> said error correction device is arranged to
> correct a received service request by utilizing information stored in the memory containing only the service requests whose contents are correct,
> receive and store, in said memory, service requests which have led to successful identification of the requested service and whose contents are correct, the service requests being stored in said memory as soon as the service requests have led to successful identification of a requested new service,
> correct the contents of a received service request by utilizing the service requests stored in the memory whose requested new services have been successfully identified, and
> transmit said corrected service request for further processing." See Exhibit A at Col.8:41-58.

5

23. Claim 8 of the '143 Patent is a practical application and inventive step of technology that address the specific computer-centric problem of when the user does not know the correct syntax or if the user for some reason transmits a service request with a typing error, the access point and/or the service source of the information system are not able to identify the service requested by the user.

24. Claim 8 of the '143 Patent addressed the need for an improved error correction device.

25. Specifically, to deal with the prior art technological problems, the error correction device of of Claim 8 in the '143 Patent requires (a) a memory *containing only service requests whose contents are correct*, wherein, said error correction device is arranged to (a) correct a received service request *by utilizing information stored in the memory containing only the service requests whose contents are correct*, (b) receive and store, in said memory, service requests *which have led to successful identification of the requested service and whose contents are correct*, the service requests being stored in said memory *as soon as* the service requests have led to successful identification of a requested new service, (c) correct the contents of a received service request *by utilizing the service requests stored in the memory whose requested new services have been successfully identified*, and (d) transmit said corrected service request for further processing.

26. These specific elements, <u>as combined</u>, accomplish the desired result an improved error correction device with increased user friendliness when the user does not know the correct syntax or if the user for some reason transmits a service request with a typing error, the access point and/or the service source of the information system are not able to identify the service requested by the user. Further, these specific elements also accomplish these desired results to overcome the then existing problems in the relevant field of computer-centric syntax corrections

systems. *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018) (holding that improving computer security can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem). See also *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999 (Fed. Cir. 2018); *Core Wireless Licensing v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. April 30, 2020)

27. Claims need not articulate the advantages of the claimed combinations to be eligible. *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1309 (Fed. Cir. 2020)

28. These specific elements of Claim 8 of the '143 Patent were an unconventional arrangement of elements because the prior art methodologies would simply receive a service request and carries out an analysis in order to identify the requested service by analyzing parameters included in the service request. When a known parameter was found in the message, the service associated with this parameter was provided to the source of the service request, which in a mobile communication system might be the mobile station of a subscriber. Claim 8 of the '143 Patent was able to unconventionally provide an error correction device with increased user friendliness when the user does not know the correct syntax or if the user for some reason transmits a service request with a typing error, the access point and/or the service source of the information system are not able to identify the service requested by the user. *Cellspin Soft, Inc. v. FitBit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019)

29. Further, regarding the specific non-conventional and non-generic arrangements of known, conventional pieces to overcome an existing problem, the device of Claim 8 in the '143 Patent provides an error correction device that would not preempt all ways of correcting errors

because the service request is corrected *by utilizing information stored in the memory containing only the service requests whose contents are correct*; and the service requests *which have led to successful identification of the requested service and whose contents are correct*, the service requests being stored in said memory *as soon as* the service requests have led to successful identification of a requested new service; and correct the contents of a received service request *by utilizing the service requests stored in the memory whose requested new services have been successfully identified*, any of which could be removed or performed differently to permit an error correction device or method in a different way. *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016); See also *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)

30. Based on the allegations, it must be accepted as true at this stage, that Claim 8 of the '143 Patent recites a specific, plausibly inventive way of an error correction device using specific protocols rather than the general idea of computer correction. *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020).

31. Alternatively, there is at least a question of fact that must survive the pleading stage as to whether these specific elements of Claim 8 of the '143 Patent were an unconventional arrangement of elements. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) See also *Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911, 205 L. Ed. 2d 454 (2020).

32. Defendant commercializes, inter alia, methods that perform all the steps recited in at least one claim of the '143 Patent. More particularly, Defendant commercializes, inter alia, methods that perform all the steps recited in Claim 8 of the '143 Patent. Specifically, Defendant

8

makes, uses, sells, offers for sale, or imports a method that encompasses that which is covered by Claim 8 of the '143 Patent.

## DEFENDANT'S PRODUCT(S)

33. Defendant offers solutions, such as the "IBM Watson Assistant" system (the "Accused Product"), that enables error correction. A non-limiting and exemplary claim chart comparing the Accused Product of Claim 8 of the '143 Patent is attached hereto as Exhibit B and is incorporated herein as if fully rewritten.

34. As recited in Claim 8, a system, at least in internal testing and usage, utilized by the Accused Product is an error correction device. See Ex. B.

35. As recited in one element of Claim 8, the system, at least in internal testing and usage, utilized by the Accused Product provides a memory containing only service requests whose contents are correct. See Ex. B.

36. As recited in another element of Claim 8, the system, at least in internal testing and usage, utilized by the Accused Product has an error correction device arranged to correct a received service request by utilizing information stored in the memory containing only the service requests whose contents are correct. See Ex. B.

37. As recited in another element of Claim 8, the system, at least in internal testing and usage, utilized by the Accused Product has an error correction device arranged to receive and store, in said memory, service requests which have led to successful identification of the requested service and whose contents are correct, the service requests being stored in said memory as soon as the service requests have led to successful identification of a requested new service. See Ex. B.

38. As recited in another element of Claim 8, the system, at least in internal testing and usage, utilized by the Accused Product has an error correction device arranged to correct the

9

contents of a received service request by utilizing the service requests stored in the memory whose requested new services have been successfully identified. See Ex. B.

39. As recited in another element of Claim 8, the system, at least in internal testing and usage, utilized by the Accused Product has an error correction device arranged to transmit said corrected service request for further processing. See Ex. B.

40. The elements described in the preceding paragraphs are covered by at least Claim 8 of the '143 Patent. Thus, Defendant's use of the Accused Product is enabled by the method described in the '143 Patent.

## INFRINGEMENT OF THE PATENT-IN-SUIT

41. Plaintiff realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs

42. In violation of 35 U.S.C. § 271, Defendant is now, and has been directly infringing the '143 Patent.

43. Defendant has had knowledge of infringement of the '143 Patent at least as of the service of the present Complaint.

44. Defendant has directly infringed and continues to directly infringe at least one claim of the '143 Patent by using, at least through internal testing or otherwise, the Accused Product without authority in the United States, and will continue to do so unless enjoined by this Court. As a direct and proximate result of Defendant's direct infringement of the '143 Patent, Plaintiff has been and continues to be damaged.

45. Defendant has induced others to infringe the '143 Patent by encouraging infringement, knowing that the acts Defendant induced constituted patent infringement, and its encouraging acts actually resulted in direct patent infringement.

46. By engaging in the conduct described herein, Defendant has injured Plaintiff and is thus liable for infringement of the '143 Patent, pursuant to 35 U.S.C. § 271.

47. Defendant has committed these acts of infringement without license or authorization.

48. As a result of Defendant's infringement of the '143 Patent, Plaintiff has suffered monetary damages and is entitled to a monetary judgment in an amount adequate to compensate for Defendant's past infringement, together with interests and costs.

49. Plaintiff will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.  As such, Plaintiff is entitled to compensation for any continuing and/or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement.

50. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim charts that it provides with this Complaint.  The claim chart depicted in Exhibit B is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure and does not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions.

## DEMAND FOR JURY TRIAL

51. Plaintiff demands a trial by jury of any and all causes of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a. That Defendant be adjudged to have directly infringed the '143 Patent either literally or under the doctrine of equivalents;

b. An accounting of all infringing sales and damages including, but not limited to, those sales and damages not presented at trial;

c. That Defendant, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be permanently restrained and enjoined from directly infringing the '143 Patent;

d. An award of damages pursuant to 35 U.S.C. §284 sufficient to compensate Plaintiff for the Defendant's past infringement and any continuing or future infringement up until the date that Defendant is finally and permanently enjoined from further infringement, including compensatory damages;

e. An assessment of pre-judgment and post-judgment interest and costs against Defendant, together with an award of such interest and costs, in accordance with 35 U.S.C. §284;

f. That Defendant be directed to pay enhanced damages, including Plaintiff's attorneys' fees incurred in connection with this lawsuit pursuant to 35 U.S.C. §285; and

g. That Plaintiff be granted such other and further relief as this Court may deem just and proper.

Dated: August 26, 2020

Respectfully submitted,

SAND, SEBOLT & WERNOW CO., LPA
/s/*Howard L. Wernow*
Howard L. Wernow (Ohio 0089019)
Aegis Tower - Suite 1100
4940 Munson Street, N. W.
Canton, Ohio 44718
Phone: 330-244-1174
Fax: 330-244-1173
Howard.Wernow@sswip.com

ATTORNEYS FOR PLAINTIFF